THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **UROLOGY CENTER OF GEORGIA, LLC,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | Civil Action |
| | : | No. 5:09-cv-161 (CAR) |
| **BLUE CROSS BLUE SHIELD HEALTH** | : | |
| **PLAN OF GEORGIA, INC., and** | : | |
| **BLUE CROSS AND BLUE SHIELD** | : | |
| **OF GEORGIA, INC.** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |
| _____ | : | |

## ORDER ON DEFENDANTS' MOTION TO DISMISS

Plaintiff Urology Center of Georgia, LLC (Urology Center), has filed a Complaint in which it alleges that Defendants Blue Cross Blue Shield Health Plan of Georgia, Inc., and Blue Cross and Blue Shield of Georgia, Inc. (Blue Cross), breached the terms of their health insurance policies by drastically reducing the rates at which they compensate out-of-network providers.  Blue Cross has moved to dismiss the Complaint.  Upon review of the Complaint and the arguments of the parties, the Court finds that Plaintiff's claims under the Employee Retirement Income Security Act (ERISA) must be dismissed for failure to exhaust administrative remedies.  Plaintiff's remaining claims arise under state law, and there is no diversity of citizenship among the parties.  Wherefore this Order dismisses the only claims over which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over the remaining state law claims.  The Motion to Dismiss (Doc. 8) is therefore **GRANTED**, and it is hereby ordered that the Complaint shall be **DISMISSED**, without prejudice.

1

At its heart, this case is a breach of contract claim. The contracts in dispute are insurance policies issued by Blue Cross to patients of Urology Center. The patients have assigned their right to benefits under the policies to Urology Center, so that Urology Center would be able to submit claims for reimbursement directly to Blue Cross. Urology Center contends that it is also an intended third-party beneficiary of the policies. Some of the policies in dispute were provided by the patients' employers as part of employee welfare benefit plans. Other policies were individual policies obtained directly by the patient from Blue Cross.

The policies at issue in this case are either Preferred Provider Organization (PPO) policies or Point of Service (POS) policies. Under such policies, the insured has a choice of using a physician within the Blue Cross preferred provider network or of using a physician from outside the network. When the insured chooses to use a provider outside the network, the policies require higher deductibles and coinsurance payments. Urology Center is not in the Blue Cross preferred provider network.

Urology Center contends that Blue Cross failed to provide benefits for services from out-of-network providers as required under the terms of its policies. According to the Complaint, the terms of the policies require Blue Cross to determine reimbursement for out-of-network services based on the "usual, customary, and reasonable rate," or UCR. The UCR rate is determined based on the amount providers usually, customarily, and reasonably charge for a given service in a given geographic area. Urology Center contends that in January 2007, Blue Cross cut its reimbursement rate for out-of-network providers by 80%, to a level far below the UCR rate required under its own policy terms. This cut allegedly reduced reimbursement to levels that neither patients nor providers could afford to accept, effectively denying Blue Cross insureds the ability to choose out-of-network treatment.

Urology Center now brings suit against Blue Cross for breach of contract, violation of ERISA, unfair and deceptive trade practices, quantum meruit, and unjust enrichment. Urology Center seeks to pursue its claims as a class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of itself and all other surgery centers in Georgia that provided out-of-network care to Blue Cross insureds and were not compensated based on the UCR for their services.

Urology Center's Complaint divides its claims into two categories. The Complaint alleges that some of Urology Center's patients had Blue Cross policies that were part of employee welfare benefit plans, while others had policies that they purchased individually. Urology Center acknowledges that the policies that were part of employee welfare benefit plans will be governed by ERISA. The policies that were obtained by individuals will be governed by state law.

To survive a motion to dismiss, a complaint must set forth sufficient factual detail to support a legal right to relief. Those factual allegations need not be detailed, but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). On motion to dismiss, courts must accept all well-pleaded facts as true, but are not required to accept a plaintiff's legal conclusions. Ashcroft v. Iqbal, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009). The factual allegations must "plausibly give rise to an entitlement to relief." Id. 129 S.Ct. at 1950. "A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009).

Urology Center's claims related to employer-provided policies must be dismissed because the Complaint fails to provide sufficient factual allegations showing that Urology Center has exhausted its administrative remedies. Before bringing suit in federal court, a plaintiff in an ERISA action must exhaust available administrative remedies. See Bickley v. Caremark RX, Inc., 461 F.3d

1325, 1328 (11th Cir. 2006). The exhaustion requirement is intended to "reduce the number of frivolous lawsuits under ERISA, minimize the cost of dispute resolution, enhance the plan's trustees' ability to carry out their fiduciary duties expertly and efficiently by preventing premature judicial intervention in the decisionmaking process, and allow prior fully considered actions by pension plan trustees to assist courts if the dispute is eventually litigated." Mason v. Cont'l Group, Inc., 763 F.2d 1219, 1227 (11th Cir. 1985).

Urology Center's Complaint fails to set forth factual allegations of its pursuit of administrative remedies sufficient to raise its right to relief above a speculative level. Only two paragraphs in the Complaint relate to Urology Center's attempts to obtain redress through Blue Cross prior to filing suit. In Paragraph 21, the Complaint alleges that "Urology Center's billing personnel contacted Blue Cross on numerous occasions to find out the reasons for [reduced reimbursements] and to seek an administrative remedy for Defendants' underpayment of claims." Paragraph 55 of the Complaint alleges that "Plaintiffs' efforts to obtain redress constitute exhaustion of remedies," and argues that Blue Cross's response to those efforts demonstrates the futility of seeking administrative relief.

These two paragraphs provide little indication that Urology Center earnestly pursued administrative relief before filing suit. Instead, they merely create the impression that clerical employees at Urology Center made a few frustrated phone calls to the customer service department of Blue Cross before giving up. There is no indication that Urology Center ever filed a formal grievance or made a written request for relief. There is no indication that anyone at Urology Center ever attempted to obtain copies of plan documents that outline formal grievance procedures. There is no indication that management-level employees or officers of Urology Center ever attempted to make contact with the Blue Cross employees or officers responsible for the new compensation

4

policy.  The Complaint fails to show that Urology Center made more than a cursory attempt to address its dispute through an administrative process.

The bare allegations in the Complaint in this case contrast with the efforts alleged by plaintiffs in factually similar case from the Northern District of Georgia.  In National Renal Alliance, LLC, v. Blue Cross and Blue Shield of Georgia, Inc., 598 F.Supp.2d 1344 (N.D.Ga. 2009), as in this case, the plaintiffs complained that Blue Cross violated its plan terms when it reduced its reimbursement rates for out-of-network providers.  In National Renal, however, the plaintiffs alleged more extensive efforts to obtain redress from Blue Cross.  The National Renal plaintiffs not only contacted Blue Cross personnel to inquire about the rate change, but also initiated written correspondence and personal contact with high-level employees of Blue Cross:

> Plaintiffs alleged in their complaint that they contacted Blue Cross personnel to inquire as to the rate change.  National Renal's executives then began a correspondence with Blue Cross executives, including the Vice President of Health Services.  Blue Cross representatives even met with National Renal executives.

Id. at 1356.  The court in National Renal denied a motion to dismiss, finding that even if the plaintiffs had not satisfied a particular administrative grievance process, their efforts gave Blue Cross "an opportunity to understand National Renal's grievance and consider any response it might want to make."  Id.  As such, formal exhaustion would be futile, "an empty exercise in legal formalism."  Id.

In this case, by contrast, the Complaint fails to describe such diligent efforts to obtain redress from Blue Cross.  The Court cannot suspend the exhaustion requirement based on "bare allegations of futility."  Springer v. Wal-mart Assocs. Group Health Plan, 908 F.2d 897, 900 (11th Cir. 1990). There must be a "clear and positive" showing of futility.  Id.  The allegations of the Complaint with regard to pursuit of administrative remedies are far from clear, however.  The Complaint fails to

show that Urology Center and its employees "did the best they could to appeal to Blue Cross." Pls.' Resp. 15 (Doc. 12). Urology Center has not alleged that it complied with a formal grievance process, and it concedes in its arguments that it did not pursue a formal grievance process. The Complaint alleges only that Urology Center's "billing personnel" made a few contacts of uncertain nature to unspecified employees of Blue Cross. These allegations are insufficient to show that Blue Cross had an opportunity to understand Urology Center's grievance or to consider any response prior to the start of litigation. Such efforts cannot satisfy the exhaustion requirement and give no basis to conclude that pursuit of administrative remedies was futile.

Because the Complaint fails to set forth factual allegations sufficient to give rise to a plausible claim that Urology Center has exhausted its administrative remedies, Urology Center's claims under ERISA are to be dismissed without prejudice to any right to refile following pursuit of administrative remedies. The Court lacks original jurisdiction over the remaining state law claims for breach of contract, quantum meruit, and unjust enrichment, and declines to exercise supplemental jurisdiction over those claims. The Clerk of Court is hereby directed to **DISMISS** this case, **WITHOUT PREJUDICE**.

It is SO ORDERED this 4th day of March, 2010.

                                          S/ C. Ashley Royal
                                          C. ASHLEY ROYAL, JUDGE
                                          UNITED STATES DISTRICT COURT

chw